# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**EDWARD HENRY,**
                        **Plaintiff,**

**v.**                                                    No.    <u>CIV- 08-483</u>

**THE HERTZ CORPORATION,**
**A Delaware Corporation Doing Business**
**In the State of New Mexico;**

**MARTIN J. CHÁVEZ, Individually and**
**in his Official Capacity as Mayor of the City**
**Of Albuquerque;**

**RAY SCHULTZ, Individually and in his**
**Official Capacity as Chief of Police of the**
**City of Albuquerque;**

**JACOB STOREY, Individually and in his**
**Official Capacity as an Officer of the Albuquerque**
**Police Department;**

**JANE DOE, Individually and in her**
**Official Capacity as an Officer of the Albuquerque**
**Police Department;**

**THE CITY OF ALBUQUERQUE, Albuquerque**
**Police Department, a Municipal Entity Organized**
**Under the Laws of the State of New Mexico and**
**its Law Enforcement Agency;**

                        **Defendants.**

## <u>COMPLAINT FOR NEGLIGENCE AND</u>
## <u>CIVIL RIGHTS ABUSE (POLICE MISCONDUCT)</u>

**PLAINTIFF EDWARD HENRY**, by and through his attorneys, Dennis W.

Montoya, MONTOYA LAW, INC., and Judith A. Rosenstein, brings this

complaint for violation of his civil rights under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, and for New Mexico common law tort (negligence), and for his Complaint alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action pursuant to 42 U.S.C. §§ 1983 and 1988, and 28 U.S.C. § 1343.

2.      Venue is proper in this district, pursuant to 28 U.S.C. § 1357, as parties are all residents or entities of New Mexico and all of the acts complained of occurred in New Mexico. Plaintiffs' causes of action arose in New Mexico.

## PARTIES

3.      Plaintiff Edward Henry, at times relevant to this Complaint, was an adult resident and citizen of the State of Louisiana.

4.      Plaintiff is African American (Black);

5.      Defendant Hertz Corporation, at all relevant times herein, was a Delaware Corporation doing business in the State and federal judicial district of New Mexico.

6.      Defendant Martin J. Chávez, at times relevant to this Complaint, was an adult resident of the State and federal judicial district of New Mexico;

7.      Defendant Chávez, at times relevant to this Complaint, was the Mayor

of the City of Albuquerque, and as such was a policy maker for the Albuquerque Police Department.  His actions complained of herein were all undertaken pursuant to his actual or apparent authority as Mayor of the City of Albuquerque, and hence were "under color of state law" as contemplated pursuant to 42 U.S.C. §1983;

8.     Defendant Chávez is Hispanic and of light skin complexion;

9.     Defendant Chávez is sued herein in his individual and in his official capacities;

10.     Defendant Ray Schultz, at times relevant to this Complaint, was an adult resident of the State and federal judicial district of New Mexico;

11.     Defendant Schultz, at times relevant to this Complaint, was the Chief of Police of the City of Albuquerque, and as such was a policy maker for the Albuquerque Police Department.   His actions complained of herein were all undertaken pursuant to his actual or apparent authority as Chief of Police of the City of Albuquerque, and hence were "under color of state law" as contemplated pursuant to 42 U.S.C. §1983;

12.     Defendant Schultz is white;

13.     Defendant Chávez is sued herein in his individual and in his official capacities;

14.     Defendant Jacob Storey, at times relevant to this Complaint, was an

adult resident of the State and federal judicial district of New Mexico;

15.     Defendant Storey, at times relevant to this Complaint, was an officer of the Albuquerque Police Department.  His actions complained of herein were all undertaken pursuant to his actual or apparent authority as a law enforcement officer, and hence were "under color of state law" as contemplated pursuant to 42 U.S.C. §1983;

16.     Defendant Storey is white;

17.     Defendant Storey is sued herein in his individual and in his official capacities;

18.     Defendant Jane Doe, at times relevant to this Complaint, was an adult resident of the State and federal judicial district of New Mexico;

19.     Defendant Doe, at times relevant to this Complaint, was an officer of the Albuquerque Police Department.  Her actions complained of herein were all undertaken pursuant to her actual or apparent authority as a law enforcement officer, and hence were "under color of state law" as contemplated pursuant to 42 U.S.C. §1983;

20.     Defendant Doe is white or Hispanic and female;

21.     Defendant Doe is sued herein in her individual and in her official capacities;

22.     Defendant City of Albuquerque/Albuquerque Police Department, at all times relevant to this complaint, was a law enforcement agency operated by Defendant City of Albuquerque. At all times material to this complaint, Defendant City of Albuquerque acted under color of state law.

23.     The City of Albuquerque and its police department operate within the State and federal judicial district of New Mexico.

## FACTUAL BACKGROUND

24.     Plaintiffs' federal constitutional claims arise under 42 U.S.C. § 1983, and under the Fourteenth and Fourth Amendments to the United States Constitution.

25.     The Fourth Amendment to the United States Constitution reads as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

26.     On or about May 21, 2006, Plaintiff, on a business trip to Albuquerque from his home in Dallas, Texas, rented a 4-Door Dodge Charger automobile, Vehicle Identification Number (VIN) 2B3KA53HX6H363B98, from

Defendant Hertz Corporation;

27.    Unbeknownst to Plaintiff, said motor vehicle had been reported stolen by a previous customer of Hertz;

28.    Defendant Hertz Corporation had regained possession of the once-stolen motor vehicle through circumstances and events that are as of this writing unknown to the Plaintiff.  However, upon information and belief after diligent investigation, Defendant Hertz Corporation had failed to assure that the Albuquerque Police Department was notified that the vehicle was no longer a "stolen vehicle" as of May 21, 2006, when Defendant Hertz rented the same automobile to the Plaintiff;

29.    After renting said motor vehicle from Defendant Hertz Corporation, Plaintiff proceeded, on May 21, 2006, to an Albuquerque Wal-Mart store located at 8300 Central Avenue, NE, where he entered and shopped inside the store;

30.    As Plaintiff left the parking lot, returning to his hotel, he noticed an unmarked vehicle following him.  Upon information and belief after diligent investigation, this automobile was driven by Defendant Jacob Storey.  Defendant Storey had elected to follow Mr. Henry and to "run" his license plate number solely because Mr. Henry is Black (African American), as Plaintiff had violated no traffic laws or ordinances and was driving in a safe and prudent manner.

31.    The automobile that followed Plaintiff pulled very close behind him, and he was able to see that it was a police officer. Plaintiff slowed his vehicle considerably to allow the officer to pass him, but the officer remained behind Plaintiff. At this point, Plaintiff was not alarmed, as he had broken no traffic ordinances, and the officer was not initiating his emergency equipment or trying to stop Plaintiff.

32.    Very shortly thereafter, however, Plaintiff noticed that two or more marked police vehicles had joined the first, unmarked, car. At this point the vehicles engaged their emergency equipment and initiated a traffic stop of the Plaintiff;

33.    Plaintiff had been in the middle lane of a six-lane street, and had to cross another lane to his right to position himself at the curb, but nonetheless succeeded in promptly pulling over his motor vehicle and stopping;

34.    Plaintiff waited inside his motor vehicle for an officer to approach. He had lights shining at him, but no officer approached. Finally, Plaintiff exited his rented motor vehicle;

35.    When Plaintiff looked towards the officers, he saw that there were at least six (6) officers in at least three (3) patrol vehicles, and all had firearms trained at him, including one (1) or more shotguns. Plaintiff was ordered to re-enter his

automobile, and he immediately complied.  He was ordered over the patrol vehicle loudspeaker to turn off the ignition and to remove the keys from the switch and throw them onto the hood of his car, and he promptly complied with that command;

36.     Over the police loudspeaker Plaintiff was then ordered to put his hands outside the window of his motor vehicle in view of the officers, with which command Plaintiff promptly complied;

37.     Plaintiff was then ordered, still over the loudspeaker, to open his car door from the outside and exit the vehicle.  When he attempted to inform the officers that he could not do this without first unlocking the car door, which would require that he withdraw at least one hand from their view for that purpose, Mr. Henry was told to "shut up."   This was not the last abrupt, abusive, rude, insensitive and unprofessional comment to which he would be subjected this evening;

38.     As a result of the attitude, tone of voice and behavior by the named Defendants and the other officers that accompanied them, Mr. Henry at this point began to fear for his safety and for his life;

39.     After Mr. Henry succeeded in unlocking the automobile door and stepping out of the vehicle, he saw that at least six (6) police officers were behind

opened patrol car doors, with firearms pointed at him. Mr. Henry as a result experienced even greater anxiety and fear for his safety and for his life;

40.    Mr. Henry was ordered to move to the center lane of the street, with his hands up and in full view, and to face away from the police officers, with which he promptly complied;

41.    Mr. Henry was then commanded to reach back and grab the collar of his shirt and to pull his shirt out of his pants, with which he promptly complied;

42.    Mr. Henry was then commanded to turn around and to continue turning, with which command he promptly complied;

43.    Mr. Henry was then commanded to lie on the ground face down and to place his hands behind his head, with which command he promptly complied;

44.    Mr. Henry's right hand, and then his left, were then roughly grabbed and handcuffed;

45.    Although there were male officers available that could have performed the search, Mr. Henry was then led to the back of a police vehicle where he was rudely and in a humiliating manner physically searched by Defendant Jane Doe;

46.    During the course of the physical search, Defendant Jane Doe asked him what was in his left pants pocket. Mr. Henry responded that it was business

cards and travel rewards cards, and Defendant Doe accused him, in an arrogant, abusive, accusatory, arrogant, angry, insensitive and threatening manner of "lying."  Mr. Henry continued to fear for his safety and for his life;

47.     During the course of the physical search, Defendant Jane Doe asked Mr. Henry, in the same arrogant, abusive, accusatory, arrogant, angry, insensitive and threatening manner, who was in the vehicle with him. When he responded "no one," Defendant Doe accused Mr. Henry again of lying.  As a result of the manner and unprofessional speech of Defendant Doe, coupled with the actions of Defendant Storey and the other police officers present, Mr. Henry continued to be apprehensive and fearful for his safety and for his life;

48.     Plaintiff Henry asked Defendant Doe why he had been stopped and arrested, and she told him to "shut up."  As a result of the manner and unprofessional speech of Defendant Doe in doing this, coupled with the actions of Defendant Storey and the other police officers present, Mr. Henry continued to be apprehensive and fearful for his safety and for his life;

49.     Upon emptying the contents of his pockets, Defendant Doe discovered that the contents were exactly what Mr. Henry had said that they were, whereupon she stated to Mr. Henry, in the same accusatory, arrogant, angry, insensitive and threatening manner that the cards were "fake."  As a result of the manner and

unprofessional speech of Defendant Doe in doing this, coupled with the actions of Defendant Storey and the other police officers present, Mr. Henry continued to be apprehensive and fearful for his safety and for his life;

50.    The handcuffs that were confining Mr. Henry were overly tight, and he so informed Defendant Doe, stating that they were hurting him.  In the same rude, arrogant, abusive, insensitive, angry and threatening manner, Officer Doe responded "Good!  They are supposed to hurt!," or words of very similar effect. Defendant Doe refused to loosen the handcuffs.  As a result of the manner and unprofessional speech of Defendant Doe in doing this, coupled with the actions of Defendant Storey and the other police officers present, Mr. Henry continued to be apprehensive and fearful for his safety and for his life;

51.    Plaintiff was then placed in the back seat of a patrol vehicle while officers continued to order his non-existent passenger out of Mr. Henry's Hertz rented vehicle.  When Mr. Henry again attempted to explain to the officers that there was no one else accompanying him, he was again told to "shut up." As a result of the manner and unprofessional speech of the officer or officers in doing this, coupled with the actions of Defendants Storey and Doe and the other police officers present, Mr. Henry continued to be apprehensive and fearful for his safety and for his life;

52.     Mr. Henry was asked by the officers where he was from.   He responded that he was from Dallas, Texas.   Asked why he was in Albuquerque, Mr. Henry responded that he was in Albuquerque to teach a class to City of Albuquerque waste water employees.   In response to this, he was told by one or more of the Defendants in a rude, arrogant, abusive, insensitive, angry and threatening manner that he was lying, that his purpose for visiting Albuquerque was to steal an automobile. As a result of the manner and unprofessional speech of the officer or officers in doing this, coupled with the actions of Defendants Storey and Doe and the other police officers present, Mr. Henry continued to be apprehensive and fearful for his safety and for his life;

53.     Mr. Henry asked the officers to look in the rental vehicle for his wallet and rental contract so that he could prove his identity and that he had lawfully rented the vehicle.

54.     One or more officers responded to him in a rude, arrogant, abusive, insensitive, angry and threatening manner that his rental contract was a "fake."   As a result of the manner and unprofessional speech of the officer or officers in doing this, coupled with the actions of Defendants Storey and Doe and the other police officers present, Mr. Henry continued to be apprehensive and fearful for his safety and for his life;

55.    Mr. Henry then asked the officers to look in his wallet for his driver's license and corporate credit card so that he could prove his identity and that he had lawfully rented the vehicle.

56.    One or more officers responded to him in a rude, arrogant, abusive, insensitive, angry and threatening manner that these forms of identification were all "fake."  As a result of the manner and unprofessional speech of the officer or officers in doing this, coupled with the actions of Defendants Storey and Doe and the other police officers present, Mr. Henry continued to be apprehensive and fearful for his safety and for his life;

57.    Mr. Henry's detention was significantly, unnecessarily and unreasonably prolonged and extended by the Defendants' continued and obstinate refusal to listen to any of what Plaintiff had to say about who he really was, how it could be verified that he had not stolen the vehicle, and why his arrest was unwarranted.   The continued rude, arrogant, abusive, insensitive, angry and threatening manner of the Defendants, which was in no sense justified or warranted, continued to cause Plaintiff great concern for his safety and well-being.

58.    It was only after many attempts to get someone to listen to him that Plaintiff was able to get one of the officers, possibly Defendant Storey, to get his Hertz card from Plaintiff's wallet and to call the "800" number on the card to

verify that his rental agreement was valid and that the rental vehicle was not stolen;

59.    Eventually, after an extended period of time and after he had endured much pain, anxiety, humiliation and fear, Mr. Henry was released after Hertz Corporation representatives reported to the Albuquerque Police Department that the vehicle was not stolen;

60.    Upon his release, Plaintiff asked Defendant Storey why he had been followed in the first place.  Defendant Storey replied with silence.

61.    Another of the officers approached Mr. Henry and told him to get in his rental automobile and leave.  Mr. Henry asked the officer to tell him what was to prevent his being pulled over yet again by an Albuquerque Police Department officer.  The response Mr. Henry received was yet another rude, arrogant, abusive, insensitive, angry and threatening "shut up."  As a result of this continued manner and behavior, Mr. Henry continued to experience significant apprehension, anxiety and fear for his safety and freedom.  He refused to leave the scene until he had personally contacted Hertz Corporation and verified that it was safe to continue driving the rented motor vehicle.

## COUNT I: MUNICIPAL POLICY
## (DEFENDANTS CITY OF ALBUQUERQUE & MARTIN J. CHÁVEZ III)

62.    Each and every foregoing allegation is herein incorporated by

reference as if fully set forth;

63.     The behavior directed at Mr. Henry by the named APD Officer Defendants and others accompanying them was abusive, violent, racist, and unreasonable;

64.     Said behavior does not arise in a vacuum.  Defendant Martin J. Chávez, as Mayor of the City of Albuquerque, sets policy and custom for City of Albuquerque government, including the Albuquerque Police Department;

65.     Defendant Ray Schultz, as Chief of Police of the City of Albuquerque, also sets policy and custom for the Albuquerque Police Department;

66.     Since the early days of his first administration, Mayor Chávez has systematically and methodically curried political favor with elements within the Albuquerque Police Department, and the law enforcement community generally;

67.     For each election in which Mayor Chávez has participated, significant support has been contributed by these law enforcement elements;

68.     In exchange for such political support, Mayor Chávez has consistently supported Albuquerque Police Department, often at the expense of other City of Albuquerque employees and of the public at large;

69.     At the urging of law enforcement elements, Defendant Chávez, since approximately 2001 or earlier, has "outlawed" all settlements with citizens

bringing legal actions, such as this one, for civil rights abuses;

70.     Although he has touted this measure as subjecting police misconduct to the "antiseptic effect of sunlight" by requiring a trial in all such cases, regardless of merit that would otherwise justify settlement, Defendant Chávez is well aware that the true effect of his "no settlement policy" is to embolden police officers who engage in abusive behavior such as that complained of herein because few plaintiffs and plaintiff's attorneys can bear the expense and delay of facing an inevitable trial in every police misconduct case.

71.     During the course of his mayoral administration, Mayor Chávez has received periodic reports to the effect that the "no settlement" policy is "working," because the number of police misconduct cases filed in court has diminished;

72.     Yet, during the same period of time, Defendant Chávez has ignored signs of excessive work load and stress at the Albuquerque City Attorney's Office, as overworked City of Albuquerque Attorneys struggle to keep up with an absurd workload generated by the policy of taking every police misconduct case to trial, regardless of merit, and stress-related illnesses, resignations and other signs of overwork become increasingly common;

73.     The City Attorney's Office has not been adequately staffed to keep up with the increased work demand, thereby resulting, in addition to deleterious

effects on personnel, in defaults, missed deadlines and other procedural defects that prejudice the administration of justice;

74.     Since the inception of the "no settlement" policy, there has been a chilling effect on police misconduct cases filed in court, but incidents of police misconduct, including unjustified shootings, false arrests, beatings, mauling by police dogs, rapes, racial profiling, and psychological and physical torture by elements of the Albuquerque Police Department have continued;

75.     Chief of Police Ray Schultz, as the chief Law Enforcement Officer of the City of Albuquerque, answers directly to Mayor Martin J. Chávez.  Schultz is also responsible for setting tone of the department, including the customs and policies governing his police officers, such as the customs and policies giving rise to the instant complaint.

76.     The customs and policies fostered under this regime has encouraged such police abuses, including the abuses complained of herein;

77.     The City of Albuquerque either maintains an official policy of permitting its officers to engage in the use of excessive force, racial profiling, searches and seizures without supporting probable cause and similar acts of police misconduct or, in the alternative, maintains a *de facto* policy of ignoring such actions by Defendants and other Albuquerque Police Department officers;

78.     The City of Albuquerque's knowledge of these Defendants' illegal acts towards Plaintiff Edward Henry as well as similar acts of police misconduct perpetrated by other Albuquerque Police Department officers can be inferred by the obviousness of the facts;

79.     It is not possible for these Defendants to have acted without the knowledge and permission of the City and of their supervisors;

80.     The City of Albuquerque was deliberately indifferent to the rights of Plaintiff and other citizens of Albuquerque;

81.     The City's policies, procedures, and/or customs, either official or *de facto*, were a moving force behind Defendants' illegal acts;

82.     The assessment of damages as against the City of Albuquerque and its Police Department is therefore appropriate in this case;

83.     Plaintiff was harmed and damaged by said municipal custom and policy, in an amount to be established at trial, for which he is entitled to just and fair compensation.

**WHEREFORE,** Plaintiff prays for trial by jury as to this and each count in this Complaint that is so triable, and after trial, for an award of declaratory judgment, compensatory damages, costs of this action and reasonable attorney's fees, and for such other and further relief as is deemed just and necessary in the

premises.

## COUNT II:  DENIAL OF EQUAL PROTECTION
## (RACIAL PROFILING)

84.      Each and every foregoing allegation is herein incorporated by reference as if fully set forth.

85.      Plaintiff was singled out from among other operators of motor vehicles solely because he is Black or African American, which act denied him of the equal protection of the laws without valid justification;

86.      As a direct and proximate result of said denial of Equal Protection, all of the harms and damages complained of herein came about;

87.      Plaintiff was harmed and damaged by said denial of Equal Protection, in an amount to be established at trial, for which he is entitled to just and fair compensation.

**WHEREFORE,** Plaintiff prays for trial by jury as to this and each count in this Complaint that is so triable, and after trial, for an award of declaratory judgment, compensatory damages, costs of this action and reasonable attorney's fees, and for such other and further relief as is deemed just and necessary in the premises.

## COUNT III: UNREASONABLE SEIZURE
## (EXTENDED DETENTION)

88.     Each and every foregoing allegation is herein incorporated by reference as if fully set forth.

89.     Defendants' extended detention of Plaintiff Edward Henry was wrongful and unjustified.

90.     Plaintiff Edward Henry was harmed and damaged by his warrantless arrest and extended detention, in an amount to be established at trial, for which he is entitled to just and fair compensation.

**WHEREFORE,** Plaintiff prays for trial by jury as to this and each count in this Complaint that is so triable, and after trial, for an award of declaratory judgment, compensatory damages, costs of this action and reasonable attorney's fees, and for such other and further relief as is deemed just and necessary in the premises.

## COUNT IV: EXCESSIVE USE OF POLICE FORCE
## (PHYSICAL TORTURE)

91.     Each and every foregoing allegation is herein incorporated by reference as if fully set forth.

92.     The acts complained of herein, including but not limited to pointing firearms at the Plaintiff, placing handcuffs on the Plaintiff that were too tight,

manhandling the Plaintiff, physically restraining the Plaintiff and other and similar acts of physical aggression were excessive, unreasonable and unjustified under the circumstances, in effect constituted physical torture, and were in violation of Plaintiffs Fourth and Fourteenth Amendment rights;

93.     Plaintiff Edward Henry was harmed and damaged by said excessive use of force, in an amount to be established at trial, for which he is entitled to just and fair compensation.

**WHEREFORE,** Plaintiff prays for trial by jury as to this and each count in this Complaint that is so triable, and after trial, for an award of declaratory judgment, compensatory damages, costs of this action and reasonable attorney's fees, and for such other and further relief as is deemed just and necessary in the premises.

## COUNT IV: EXCESSIVE USE OF POLICE FORCE
## (PSYCHOLOGICAL TORTURE)

94.     Each and every foregoing allegation is herein incorporated by reference as if fully set forth.

95.     The acts complained of herein, including but not limited to repeatedly calling Plaintiff a liar, refusing to verify his identification, excessive delay in contacting Hertz Corporation, accusing Plaintiff, saying "Good! They are

supposed to hurt!" instead of loosening the handcuffs when Plaintiff requested it, and generally behaving in a rude, arrogant, abusive, insensitive, angry and threatening manner, terrorizing Plaintiff and placing him in imminent fear and apprehension for his safety and for his life, and similar acts of psychological aggression were excessive, unreasonable and unjustified under the circumstances, in effect constituted psychological torture, and excessive use of police force, and were in violation of Plaintiffs Fourth and Fourteenth Amendment rights;

96.     Plaintiff Edward Henry was harmed and damaged by said excessive use of force, in an amount to be established at trial, for which he is entitled to just and fair compensation.

**WHEREFORE,** Plaintiff prays for trial by jury as to this and each count in this Complaint that is so triable, and after trial, for an award of declaratory judgment, compensatory damages, costs of this action and reasonable attorney's fees, and for such other and further relief as is deemed just and necessary in the premises.

## <u>COUNT V: NEGLIGENCE</u><br><u>(DEFENDANT HERTZ CORPORATION)</u>

97.     Each and every foregoing allegation is herein incorporated by reference as if fully set forth.

98.     Defendant Hertz Corporation owed a duty to Plaintiff, its foreseeable business invitee, to refrain from and avoid renting any automobile to a customer that was reported stolen and would subject the driver and possible occupants to the danger of being detained by the police;

99.     Defendant Hertz Corporation was negligent in that it breached that duty by renting the subject motor vehicle to Plaintiff while the Albuquerque Police Department had notice that the vehicle was a stolen vehicle, thereby exposing him to the danger of being detained by the police;

100.    Plaintiff was harmed and damaged by said negligence, in an amount to be established at trial, for which he is entitled to just and fair compensation;

**WHEREFORE,** Plaintiff prays for trial by jury as to this and each count in this Complaint that is so triable, and after trial, for an award of compensatory damages and reasonable attorney's fees, and for such other and further relief as is deemed just and necessary in the premises.

## COUNT VI: NEGLIGENCE
## (DEFENDANT CITY OF ALBUQUERQUE/
## ALBUQUERQUE POLICE DEPARTMENT)

101.    Each and every foregoing allegation is herein incorporated by reference as if fully set forth.

102.     Defendant City of Albuquerque/Albuquerque Police Department owed a duty to Plaintiff, as a foreseeable member of the motoring public, to refrain from and avoid arresting and harassing Plaintiff as heretofore described based on a false report that the rented automobile that he was driving was a stolen automobile.

103.     Defendant City of Albuquerque/Albuquerque Police Department was negligent in that it breached that duty by subjecting the Plaintiff to the described detention, arrest and harassment, together with all concomitant police behavior directed at the Plaintiff, even though it had notice or reason to believe and understand that the rented vehicle was not a stolen vehicle;

104.     Plaintiff was harmed and damaged by said negligence, in an amount to be established at trial, for which he is entitled to just and fair compensation;

**WHEREFORE,** Plaintiff prays for trial by jury as to this and each count in this Complaint that is so triable, and after trial, for an award of compensatory damages and reasonable attorney's fees, and for such other and further relief as is deemed just and necessary in the premises.

## COUNT VII:  PUNITIVE DAMAGES
### (Solely Against Defendants and Storey and Doe In Their Individual Capacities)

105.     Each and every foregoing allegation is herein incorporated by

reference as if fully set forth.

106.    The acts and omissions of Defendants Jacob Storey and Jane Doe herein were willful, wanton, intentional, malicious, and committed with the intent to cause harm, and said acts and omissions did in fact cause harm to Plaintiffs.

107.    The award of punitive damages as against Defendants Storey and Doe is justified and necessary in order to dissuade Defendants Storey and Doe and others likewise situated from behaving in the same or similar fashion in the future.

108.    No punitive damages are requested or sought against any municipalities or against Defendants Storey and Doe in any of their official capacities.

**WHEREFORE**, Plaintiff prays that the Court accept his complaint and order appropriate preliminary hearings on all issues susceptible to such hearings. Plaintiff further prays that the Court, after all preliminary matters are resolved and full discovery has been had, order trial by jury of the case on its merits. Plaintiff prays that following trial this Court award nominal damages and compensatory damages against all Defendants and award punitive damages against Defendants Storey and Doe. Finally, Plaintiff prays that this Court award him declaratory judgment, the costs of this action and reasonable attorney's fees, and such other and further relief as may be deemed just and equitable under the circumstances as

described above.

                                             Respectfully submitted,

                                             **MONTOYA LAW, INC**.

By:    _____

                                             Dennis W. Montoya
                                             Attorney for Plaintiff
                                             P.O. Box 15235
                                             Rio Rancho, NM 87174-0235

                                             (505) 246-8499
                                             (505) 246-8599 (facsimile)
                                             dmontoya@montoyalaw.com

                                             Judith A. Rosenstein
                                             Attorney for Plaintiff
                                             P.O. Box 25622
                                             Albuquerque, NM  87125-0622

                                             (505) 341-9464
                                             (505) 797-8086
                                             jrosenstein7@cybermesa.com