## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**EDWARD HENRY,**

          **Plaintiff,**

**vs.**                                   **CIV No. 08-483 JCH/ACT**

**THE HERTZ CORPORATION, a**
**Delaware corporation doing business in**
**the State of New Mexico, et al.**

          **Defendants.**

## PLAINTIFF'S MEMORANDUM BRIEF IN SUPPORT OF HIS MOTION
## FOR SUMMARY JUDGMENT AS TO
## ALL CITY OF ALBUQUERQUE DEFENDANTS

PLAINTIFF, Edward Henry, by and through is attorneys of record, Dennis W. Montoya and Judith A. Rosenstein, hereby submits his Memorandum Brief in Support of His Motion for Summary Judgment as to all City of Albuquerque Defendants in this case.

## LEGAL STANDARDS

### SUMMARY JUDGMENT

Summary Judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a

*HENRY vs. HERTZ CORPORATION, ET AL., USDCNM No. CIV 08-483 JCH/ACT*
*Plaintiff's Memorandum Brief in Support of Motion for Summary Judgment*
*as to City of Albuquerque Defendants*
*Page 1*

matter of law." *Adair Group, Inc. v. St. Paul Fire and Marine Ins. Co.*, 477 F.3d 1186, 1187 (10th Cir. 2007). (quoting Fed. R. Civ. P. 56(c). The Court examines the record and all reasonable inferences that might be drawn from it in the light most favorable to the non-moving party. *MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005). However, as is explained more fully below, where a party has completely "stonewalled" another in the discovery process by failing and refusing to answer discovery questions, a permissible sanction is to preclude that party from rebutting the factual assertions of the opposing party.

RACIAL PROFILING

"[C]laims asserting selective enforcement of a law on the basis of race are properly brought under the Equal Protection Clause, and . . . the right to equal protection may be violated even if the actions of the police are acceptable under the Fourth Amendment." *Marshall v. Columbia Lea Regional Hosp.*, 345 F.3d 1157, 1166 (10th Cir. 2003). A plaintiff alleging **racial profiling** in violation of the Equal Protection Clause must establish both a discriminatory effect and that the action was motivated by a discriminatory purpose. *See United States v. Armstrong*, 517 U.S. 456, 465, 116 S. Ct. 1480, 134 L. Ed. 2d 687 (1996). A plaintiff need not prove that the racially motivated purpose was the sole consideration, but merely that the discriminatory purpose was a motivating factor. *Villanueva v. Carere*, 85

*HENRY vs. HERTZ CORPORATION, ET AL., USDCNM No. CIV 08-483 JCH/ACT*
*Plaintiff's Memorandum Brief in Support of Motion for Summary Judgment*
*as to City of Albuquerque Defendants*
*Page 2*

F.3d 481, 485 (10th Cir. 1996). "[A]n invidious discriminatory purpose may often be inferred from the totality of the relevant facts." *Washington v. Davis*, 426 U.S. 229, 242, 96 S. Ct. 2040, 48 L. Ed. 2d 597 (1976). Once a plaintiff makes a prima facie showing of discriminatory purpose and effect, the burden shifts to the officer to show that the same enforcement decision would have been made if race had not been considered.  *United States v. Bell*, 86 F.3d 820, 823 (8th Cir. 1996).

EXCESSIVE USE OF POLICE FORCE

Claims of excessive use of police force are evaluated under an objective reasonableness standard, regardless of the state of mind of the officer.  *Vondrak v. City of Las Cruces*, 535 F.3d 1198 (10th Cir. 2008).  The Tenth Circuit has consistently rejected a bright-line rule requiring plaintiffs to demonstrate physical injury when bringing excessive force claims. See *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1195 (10th Cir. 2001) (explaining that "[p]hysical injury may be the most obvious injury that flows from the use of excessive force," but "declin[ing] to adopt a 'bright-line' standard dictating that force cannot be 'excessive' unless it leaves visible cuts, bruises, abrasions or scars").

## STATEMENT OF MATERIAL UNDISPUTED FACTS

The following statement of undisputed facts is taken from the Complaint filed herein, as confirmed by the deposition testimony of Plaintiff Ed Henry,

*HENRY vs. HERTZ CORPORATION, ET AL., USDCNM No. CIV 08-483 JCH/ACT*
*Plaintiff's Memorandum Brief in Support of Motion for Summary Judgment*
*as to City of Albuquerque Defendants*
*Page 3*

attached as Exhibit 1 and herein incorporated by reference.

1.     On or about May 21, 2006, Plaintiff, on a business trip to Albuquerque from his home in Dallas, Texas, rented a 4-Door Dodge Charger automobile, Vehicle Identification Number (VIN) 2B3KA53HX6H363B98, from Defendant Hertz Corporation;

2.     Unbeknownst to Plaintiff, said motor vehicle had been reported stolen by a previous customer of Hertz;

3.     Defendant Hertz Corporation had regained possession of the once-stolen motor vehicle through circumstances and events that are as of this writing unknown to the Plaintiff.  However, upon information and belief after diligent investigation, Defendant Hertz Corporation had failed to assure that the Albuquerque Police Department was notified that the vehicle was no longer a "stolen vehicle" as of May 21, 2006, when Defendant Hertz rented the same automobile to the Plaintiff;

4.     After renting said motor vehicle from Defendant Hertz Corporation, Plaintiff proceeded, on May 21, 2006, to an Albuquerque Wal-Mart store located at 8300 Central Avenue, NE, where he entered and shopped inside the store;

5.     As Plaintiff left the parking lot, returning to his hotel, he noticed an unmarked vehicle following him.  Upon information and belief after diligent

*HENRY vs. HERTZ CORPORATION, ET AL., USDCNM No. CIV 08-483 JCH/ACT*
*Plaintiff's Memorandum Brief in Support of Motion for Summary Judgment*
*as to City of Albuquerque Defendants*
*Page 4*

investigation, this automobile was driven by Defendant Jacob Storey.  Defendant Storey had elected to follow Mr. Henry and to "run" his license plate number solely because Mr. Henry is Black (African American), as Plaintiff had violated no traffic laws or ordinances and was driving in a safe and prudent manner.

6.     The automobile that followed Plaintiff pulled very close behind him, and he was able to see that it was a police officer.  Plaintiff slowed his vehicle considerably to allow the officer to pass him, but the officer remained behind Plaintiff.  At this point, Plaintiff was not alarmed, as he had broken no traffic ordinances, and the officer was not initiating his emergency equipment or trying to stop Plaintiff.

7.     Very shortly thereafter, however, Plaintiff noticed that two or more marked police vehicles had joined the first, unmarked, car.  At this point the vehicles engaged their emergency equipment and initiated a traffic stop of the Plaintiff;

8.     Plaintiff had been in the middle lane of a six-lane street, and had to cross another lane to his right to position himself at the curb, but nonetheless succeeded in promptly pulling over his motor vehicle and stopping;

9.     Plaintiff waited inside his motor vehicle for an officer to approach. He had lights shining at him, but no officer approached.  Finally, Plaintiff exited

*HENRY vs. HERTZ CORPORATION, ET AL., USDCNM No. CIV 08-483 JCH/ACT*
*Plaintiff's Memorandum Brief in Support of Motion for Summary Judgment*
*as to City of Albuquerque Defendants*
*Page 5*

his rented motor vehicle;

10.    When Plaintiff looked towards the officers, he saw that there were at least six (6) officers in at least three (3) patrol vehicles, and all had firearms trained at him, including one (1) or more shotguns.  Plaintiff was ordered to re-enter his automobile, and he immediately complied.  He was ordered over the patrol vehicle loudspeaker to turn off the ignition and to remove the keys from the switch and throw them onto the hood of his car, and he promptly complied with that command;

11.    Over the police loudspeaker Plaintiff was then ordered to put his hands outside the window of his motor vehicle in view of the officers, with which command Plaintiff promptly complied;

12.    Plaintiff was then ordered, still over the loudspeaker, to open his car door from the outside and exit the vehicle.  When he attempted to inform the officers that he could not do this without first unlocking the car door, which would require that he withdraw at least one hand from their view for that purpose, Mr. Henry was told to "shut up."  This was not the last abrupt, abusive, rude, insensitive and unprofessional comment to which he would be subjected this evening;

13.    As a result of the attitude, tone of voice and behavior by the named

*HENRY vs. HERTZ CORPORATION, ET AL., USDCNM No. CIV 08-483 JCH/ACT*
*Plaintiff's Memorandum Brief in Support of Motion for Summary Judgment*
*as to City of Albuquerque Defendants*
*Page 6*

Defendants and the other officers that accompanied them, Mr. Henry at this point began to fear for his safety and for his life;

14.    After Mr. Henry succeeded in unlocking the automobile door and stepping out of the vehicle, he saw that at least six (6) police officers were behind opened patrol car doors, with firearms pointed at him.  Mr. Henry as a result experienced even greater anxiety and fear for his safety and for his life;

15.    Mr. Henry was ordered to move to the center lane of the street, with his hands up and in full view, and to face away from the police officers, with which he promptly complied;

16.    Mr. Henry was then commanded to reach back and grab the collar of his shirt and to pull his shirt out of his pants, with which he promptly complied;

17.    Mr. Henry was then commanded to turn around and to continue turning, with which command he promptly complied;

18.    Mr. Henry was then commanded to lie on the ground face down and to place his hands behind his head, with which command he promptly complied;

19.    Mr. Henry's right hand, and then his left, were then roughly grabbed and handcuffed;

20.    Although there were male officers available that could have performed the search, Mr. Henry was then led to the back of a police vehicle where

*HENRY vs. HERTZ CORPORATION, ET AL., USDCNM No. CIV 08-483 JCH/ACT*
*Plaintiff's Memorandum Brief in Support of Motion for Summary Judgment*
*as to City of Albuquerque Defendants*
*Page 7*

he was rudely and in a humiliating manner physically searched by Defendant Jane Doe;

21.     During the course of the physical search, Defendant Jane Doe asked him what was in his left pants pocket.  Mr. Henry responded that it was business cards and travel rewards cards, and Defendant Doe accused him, in an arrogant, abusive, accusatory, arrogant, angry, insensitive and threatening manner of "lying."  Mr. Henry continued to fear for his safety and for his life;

22.     During the course of the physical search, Defendant Jane Doe asked Mr. Henry, in the same arrogant, abusive, accusatory, arrogant, angry, insensitive and threatening manner, who was in the vehicle with him. When he responded "no one," Defendant Doe accused Mr. Henry again of lying.  As a result of the manner and unprofessional speech of Defendant Doe, coupled with the actions of Defendant Storey and the other police officers present, Mr. Henry continued to be apprehensive and fearful for his safety and for his life;

23.     Plaintiff Henry asked Defendant Doe why he had been stopped and arrested, and she told him to "shut up."  As a result of the manner and unprofessional speech of Defendant Doe in doing this, coupled with the actions of Defendant Storey and the other police officers present, Mr. Henry continued to be apprehensive and fearful for his safety and for his life;

*HENRY vs. HERTZ CORPORATION, ET AL., USDCNM No. CIV 08-483 JCH/ACT*
*Plaintiff's Memorandum Brief in Support of Motion for Summary Judgment*
*as to City of Albuquerque Defendants*
*Page 8*

24.    Upon emptying the contents of his pockets, Defendant Doe discovered that the contents were exactly what Mr. Henry had said that they were, whereupon she stated to Mr. Henry, in the same accusatory, arrogant, angry, insensitive and threatening manner that the cards were "fake."   As a result of the manner and unprofessional speech of Defendant Doe in doing this, coupled with the actions of Defendant Storey and the other police officers present, Mr. Henry continued to be apprehensive and fearful for his safety and for his life;

25.    The handcuffs that were confining Mr. Henry were overly tight, and he so informed Defendant Doe, stating that they were hurting him.  In the same rude, arrogant, abusive, insensitive, angry and threatening manner, Officer Doe responded "Good!  They are supposed to hurt!," or words of very similar effect. Defendant Doe refused to loosen the handcuffs.  As a result of the manner and unprofessional speech of Defendant Doe in doing this, coupled with the actions of Defendant Storey and the other police officers present, Mr. Henry continued to be apprehensive and fearful for his safety and for his life;

26.    Plaintiff was then placed in the back seat of a patrol vehicle while officers continued to order his non-existent passenger out of Mr. Henry's Hertz rented vehicle.  When Mr. Henry again attempted to explain to the officers that there was no one else accompanying him, he was again told to "shut up." As a

*HENRY vs. HERTZ CORPORATION, ET AL., USDCNM No. CIV 08-483 JCH/ACT*
*Plaintiff's Memorandum Brief in Support of Motion for Summary Judgment*
*as to City of Albuquerque Defendants*
*Page 9*

result of the manner and unprofessional speech of the officer or officers in doing this, coupled with the actions of Defendants Storey and Doe and the other police officers present, Mr. Henry continued to be apprehensive and fearful for his safety and for his life;

27.     Mr. Henry was asked by the officers where he was from.   He responded that he was from Dallas, Texas.   Asked why he was in Albuquerque, Mr. Henry responded that he was in Albuquerque to teach a class to City of Albuquerque waste water employees.   In response to this, he was told by one or more of the Defendants in a rude, arrogant, abusive, insensitive, angry and threatening manner that he was lying, that his purpose for visiting Albuquerque was to steal an automobile. As a result of the manner and unprofessional speech of the officer or officers in doing this, coupled with the actions of Defendants Storey and Doe and the other police officers present, Mr. Henry continued to be apprehensive and fearful for his safety and for his life;

28.     Mr. Henry asked the officers to look in the rental vehicle for his wallet and rental contract so that he could prove his identity and that he had lawfully rented the vehicle.

29.     One or more officers responded to him in a rude, arrogant, abusive, insensitive, angry and threatening manner that his rental contract was a "fake."   As

*HENRY vs. HERTZ CORPORATION, ET AL., USDCNM No. CIV 08-483 JCH/ACT*
*Plaintiff's Memorandum Brief in Support of Motion for Summary Judgment*
*as to City of Albuquerque Defendants*
*Page 10*

a result of the manner and unprofessional speech of the officer or officers in doing this, coupled with the actions of Defendants Storey and Doe and the other police officers present, Mr. Henry continued to be apprehensive and fearful for his safety and for his life;

30.    Mr. Henry then asked the officers to look in his wallet for his driver's license and corporate credit card so that he could prove his identity and that he had lawfully rented the vehicle.

31.    One or more officers responded to him in a rude, arrogant, abusive, insensitive, angry and threatening manner that these forms of identification were all "fake."  As a result of the manner and unprofessional speech of the officer or officers in doing this, coupled with the actions of Defendants Storey and Doe and the other police officers present, Mr. Henry continued to be apprehensive and fearful for his safety and for his life;

32.    Mr. Henry's detention was significantly, unnecessarily and unreasonably prolonged and extended by the Defendants' continued and obstinate refusal to listen to any of what Plaintiff had to say about who he really was, how it could be verified that he had not stolen the vehicle, and why his arrest was unwarranted.   The continued rude, arrogant, abusive, insensitive, angry and threatening manner of the Defendants, which was in no sense justified or

*HENRY vs. HERTZ CORPORATION, ET AL., USDCNM No. CIV 08-483 JCH/ACT*
*Plaintiff's Memorandum Brief in Support of Motion for Summary Judgment*
*as to City of Albuquerque Defendants*
*Page 11*

warranted, continued to cause Plaintiff great concern for his safety and well-being.

33.    It was only after many attempts to get someone to listen to him that Plaintiff was able to get one of the officers, possibly Defendant Storey, to get his Hertz card from Plaintiff's wallet and to call the "800" number on the card to verify that his rental agreement was valid and that the rental vehicle was not stolen;

34.    Eventually, after an extended period of time and after he had endured much pain, anxiety, humiliation and fear, Mr. Henry was released after Hertz Corporation representatives reported to the Albuquerque Police Department that the vehicle was not stolen;

35.    Upon his release, Plaintiff asked Defendant Storey why he had been followed in the first place.  Defendant Storey replied with silence.

36.    Another of the officers approached Mr. Henry and told him to get in his rental automobile and leave.  Mr. Henry asked the officer to tell him what was to prevent his being pulled over yet again by an Albuquerque Police Department officer.  The response Mr. Henry received was yet another rude, arrogant, abusive, insensitive, angry and threatening "shut up."  As a result of this continued manner and behavior, Mr. Henry continued to experience significant apprehension, anxiety and fear for his safety and freedom.  He refused to leave the scene until he had personally contacted Hertz Corporation and verified that it was safe to continue

*HENRY vs. HERTZ CORPORATION, ET AL., USDCNM No. CIV 08-483 JCH/ACT*
*Plaintiff's Memorandum Brief in Support of Motion for Summary Judgment*
*as to City of Albuquerque Defendants*
*Page 12*

driving the rented motor vehicle.

## **CONCLUSION**

The foregoing facts clearly demonstrate that the officer "ran" Mr. Henry's license plate number for absolutely no reason other than the color of Mr. Henry's skin. Thereafter, the Albuquerque Police Department officers involved engaged in a display of force and intimidation towards Mr. Henry that was grossly disproportionate to any threat that he might have posed. They refused to believe Mr. Henry, insulted him, delayed confirming that he was legitimately in possession of the rental vehicle, and in general terrorized him. Mr. Henry is entitled to judgment in his favor as a matter of law.

Respectfully Submitted:
**MONTOYA LAW, INC.**

BY:

_____
Dennis W. Montoya
P.O. Box 15235
Rio Rancho, NM  87174-0235
(505) 246-8499
(505) 246-8599 (Fax)
dmontoya@montoyalaw.com

*HENRY vs. HERTZ CORPORATION, ET AL., USDCNM No. CIV 08-483 JCH/ACT*
*Plaintiff's Memorandum Brief in Support of Motion for Summary Judgment*
*as to City of Albuquerque Defendants*
*Page 13*

**I HEREBY CERTIFY** that the foregoing Memorandum Brief in Support of Motion for Summary Judgment was filed via the Court's CM/ECF electronic filing system, which upon information and belief resulted in its electronic transmission, together with a copy of this Certificate of Service, to all counsel of record.

_____

Dennis W. Montoya

*HENRY vs. HERTZ CORPORATION, ET AL., USDCNM No. CIV 08-483 JCH/ACT*
*Plaintiff's Memorandum Brief in Support of Motion for Summary Judgment*
*as to City of Albuquerque Defendants*
*Page 14*