## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

EDWARD HENRY,

                Plaintiff,

v.                                                  08-CV-483 JCH/ACT

THE HERTZ CORPORATION, a
Delaware corporation doing business in
the State of New Mexico, et al.,

                Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on *Defendant The Hertz Corporation's Motion for Summary Judgment* [Doc. 14]. Defendant, The Hertz Corporation ("Hertz"), seeks summary judgment on Plaintiff's claim of negligence.[1] Because the parties briefed this motion prior to completion of discovery, the Court held a hearing on the motion on September 1, 2009, in an attempt to attempt to clarify the undisputed material facts. The Court having considered the motion, briefs, arguments at the hearing, and relevant law, and being otherwise fully informed, finds that Hertz's motion should be GRANTED.

## FACTUAL BACKGROUND

This case arises from the detainment and questioning by several members of the Albuquerque Police Department of an African-American businessman who had rented a vehicle from Hertz that had been mistakenly listed as stolen. Due to the procedural posture of the case, the Court views the following facts in the light most favorable to Plaintiff and allows Plaintiff all reasonable inferences to be drawn from the evidence.

---

[1] Plaintiff's Complaint names multiple other defendants, including the Albuquerque Police Department officers who detained Plaintiff, the Chief of Police, the Mayor of Albuquerque, and the City of Albuquerque, but all are part of Plaintiff's §1983 claims, which will not be discussed here.

On or about May 21, 2006, Plaintiff Edward Henry ("Henry"), who was on a business trip to Albuquerque from his home in Dallas, Texas, rented a white 4-door Dodge Charger from Hertz.  After renting the car, Plaintiff proceeded to a local Wal-Mart.  When Plaintiff left the store's parking lot on the way back to his hotel, he noticed an unmarked vehicle following him. The officer in the unmarked vehicle had run the Charger's license plates through the National Crime Information Center ("NCIC") database, and the car appeared there as having been reported stolen on April 27, 2006.

Very shortly thereafter, Henry noticed that two or more marked police units had joined the first unmarked car.  All of the police vehicles engaged their emergency equipment and initiated a stop of the Charger.  Henry, who had been in the middle lane of a six-lane street, pulled the Charger over.  Henry alleges that although the police vehicles shone lights on him, no officer approached.  Both parties agree that Henry then got out of the Charger, where he noticed at least six police officers with their firearms drawn.  Henry was ordered to re-enter his vehicle, turn off the car, remove the keys from the ignition, and toss the keys out the window.  Over the police loudspeaker, Henry was ordered to put his hands outside the window, in plain view of the officers.  Henry was then ordered to unlock the car door and move to the center lane of the street, which he did.  Ultimately, Henry was made to lie on the ground face down and to place his hands behind his head.  An officer grabbed his hands, and he was handcuffed.  Subsequently, a female police officer searched Henry and he was placed in the back seat of a patrol car.  The officers asked Henry questions, including where he was from and why he was in Albuquerque. Henry informed the officers that he was in Albuquerque for business, that he had rented the Charger lawfully, and that he was in possession of the rental contract.  Henry alleges that the officer's responses to his answers were rude, arrogant, abusive, insensitive, angry, and

threatening, that the officers did not believe his responses to their questioning, and that it took some time before one of the officers retrieved the rental information and actually contacted Hertz.

Upon contacting Hertz, the officers determined that Henry had lawfully rented the Charger. The officers ultimately released Henry after Hertz representatives confirmed that the car was not stolen. Henry refused to leave the scene until he personally contacted Hertz to verify that it was safe to continue driving the rented vehicle. When Henry returned the rental car to Hertz's Albuquerque location the next day, he informed the local representatives that he had been arrested.

The Hertz Station Manager, Mike Burnham, contacted Sandra Payne ("Payne"), the Hertz Area Manager, who verified that Hertz had never reported the car as stolen. Payne also contacted the Albuquerque Police Department and spoke with a Lieutenant Bakas ("Lt. Bakas"), who informed Payne that, on April 26, 2006, a Mary McCormack ("McCormack") had reported a vehicle as stolen. McCormack is a well-known actress who was in Albuquerque to film a television series at that time. Payne's affidavit further states that she reviewed Hertz' internal records, specifically the movement display, and confirmed that the last renter of the vehicle driven by Henry was a John Polus[2], and that a Mary "McCormick"[3] had never rented the vehicle.

---

[2] John Polus is also alleged in the Insurance Adjuster's Report (attached as Exhibit 1 to Doc. 19) to have been the renter at the time the car was reported stolen.

[3] Throughout Hertz's briefing, McCormack's name is intermittently spelled correctly and incorrectly as "McCormick," and Payne's affidavit spells the name as "McCormick." Even the spelling of the name may have played a role in identifying whether or not the car Henry was driving had been reported as stolen: if the movement display functions as a search engine and the name were typed incorrectly, then it would show up that a McCormick had never rented the vehicle, while it is possible that a McCormack had.

Hertz also asserts that John Polus had returned the vehicle and that at no time had it been reported stolen.  In his response to Hertz's motion for summary judgment, Henry disputed this allegation, asserting that the car clearly must have been reported stolen in order to precipitate his detainment for its reported theft.  However, at the hearing on this motion, Plaintiff's counsel conceded that the car Henry was driving when pulled over was not the car that had initially been reported stolen.

The events surrounding the report of the stolen vehicle are rife with inconsistencies, up to what model and color of vehicle was reported as stolen.  The car Henry was driving at the time of the incident was a white 2006 Dodge Charger, license plate number 844-NWW.  The police report entered by the officer who reported the vehicle as stolen, an Officer Cadena, describes the car as a burgundy 2006 Dodge Charger, license plate number 844-NWW.[4]

The inconsistencies continue in the manner and order in which the car was reported stolen, as well as if, when, and by whom Hertz was notified that the Charger was reported stolen. Hertz asserts that it never received notice that the car was reported stolen or listed as stolen in the NCIC database.  Officer Cadena's police report ("Police Rept."), attached as Exhibit 1 to Doc. 43, states that McCormack called him on April 27, 2006 and "stated that the vehicle that she rented from Hertz was stolen."  Police Rept. at 2.  The report also notes that McCormack "stated that she spoke with Hertz and they advised that they did not take the vehicle."  *Id*.  It further indicates that the vehicle was then entered into the NCIC database as stolen.  *Id*.

---

[4]In the parties' Pretrial Order [Doc. 41], Hertz contends that "a recording of the initial report of a stolen vehicle to the dispatcher by a member of the [television] production company...reported the vehicle as a 2006 white Chevy Impala registered in New Mexico with license plate 844 HNC."  Doc. 41 at 4-5.  This contention is not part of the record before the Court because no party has presented admissible evidence with respect to this alleged fact.

Hertz's insurance company prepared a report based on its investigation of McCormack's reported theft of the vehicle she had rented. The Insurance Adjuster's Report ("Adjuster's Rept."), attached as Exhibit 1 to Doc. 19 and dated July 7, 2006, is inconsistent with the police report. It documents the insurance adjuster's futile attempts to reach McCormack and a conversation that he had with Officer Cadena regarding the reporting of the allegedly stolen vehicle. The report indicates that Officer Cadena told the adjuster that the car had originally been reported stolen by one of the "movie set crew," whose name Officer Cadena did not obtain. *See* Adjuster's Rept. at 2. The Adjuster's Report also indicates that Officer Cadena told the adjuster that, after receiving the initial report of a stolen vehicle, he then called McCormack and spoke with her directly, and that she informed him that she had rented the vehicle for her personal use. *Id*. Officer Cadena apparently then claimed that "he called the Hertz office and spoke with someone there and inquired if they had retrieved the vehicle for any reason" and that when Hertz informed him they had not retrieved the vehicle, he proceeded to file the stolen vehicle report. *Id*. The Adjuster's Report expresses uncertainty as to whether McCormack, Officer Cadena, or both had contacted Hertz to see if they had retrieved the vehicle, but nowhere does it indicate that Hertz was informed that the vehicle would be reported as stolen. The report also suggested making contact with the named renter of the vehicle that was reported stolen (John Polus) to see if he was an acquaintance of McCormack, but nothing in the record indicates that such contact was made by anyone, including during the discovery phase.

After the May 21, 2006 incident, Hertz sent a follow up letter by certified mail to NCIC to verify that the car had been removed from the NCIC listing. Hertz apologized to Henry, and claims to have done everything within its power to clear Henry in response to the Albuquerque Police Officer's call about the rental car. According to Payne's affidavit, Hertz' Albuquerque

5

location rents approximately 148,000 vehicles a year.  On May 17, 2008, Henry filed his

Complaint seeking damages from Hertz for negligence.

Because the briefing on this motion was completed prior to the close of discovery, the

Court held a hearing on September 1, 2009, in an attempt to clarify some of the facts regarding

the identity of the vehicle that had been reported stolen, the manner in which it had been

reported stolen, what knowledge Hertz had relating to the report of the stolen vehicle, and

whether the car that Henry was driving when pulled over by the police was, in fact, the same car

that was initially reported stolen.  Although the record contains no further facts gathered in

discovery to shed light on the events surrounding the reporting of the vehicle as stolen,

Plaintiff's counsel admitted at the hearing that the car that was reported stolen is not the same as

the car the Henry was driving when he was pulled over.

## LEGAL STANDARDS

A. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides for entry of summary judgment

where "there is no genuine issue as to any material fact" and the moving party is "entitled to

judgment as a matter of law." Fed.R.Civ.P. 56(c).  "Summary judgment is appropriate only if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law." *Tomas v. IBM*, 48 F.3d 478, 484 (10th Cir.

1995) (citation omitted).  In applying this standard, the record and reasonable inferences

therefrom are viewed in the light most favorable to the party opposing summary judgment, in

this case, Plaintiff.  *See McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir.

1998).

The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party meets its burden, "the burden shifts to the nonmovant to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).  The opposing party may not rest upon "mere allegations and denials in the pleadings. . . but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) (citation omitted).  An issue of fact is genuine if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the nonmoving party.  *See id.* at 249.  "The nonmoving party must go beyond the pleadings and establish, through admissible evidence, that there is a genuine issue of material fact that must be resolved by the trier of fact."  *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citation omitted).

B. <u>Negligence</u>

In New Mexico, "a negligence claim requires the existence of a duty from a defendant to a plaintiff, breach of that duty, which is typically based upon a standard of reasonable care, and the breach being a proximate cause and cause in fact of the plaintiff's damages." *Herrera v. Quality Pontiac*, 134 N.M. 43, 48 (2003).

"Negligence is generally a question of fact for the jury.  A finding of negligence, however, is dependent upon the existence of a duty on the part of the defendant.  Whether a duty exists is a question of law for the courts to decide."  *Id.* (quoting *Schear v. Bd. of County Comm'rs*, 101 N.M. 671, 672 (1984)) (citations omitted); *accord Solon v. WEK Drilling Co.*, 113 N.M. 566, 571 (1992) ("It is thoroughly settled in New Mexico, of course, that whether the

7

defendant owes a duty to the plaintiff is a question of law").

Duty defines one party's legal obligations toward another and limits the reach of potential liability. *See Chavez v. Desert Eagle Distrib. Co. of N.M., LLC*, 141 N.M. 116, 119 (Ct. App. 2007) (citations omitted). A duty may be established either by statute or common law. *Id.* When there is no established statutory duty, the New Mexico Supreme Court "has consistently relied on the principle of foreseeability, along with policy concerns, to determine whether a defendant owed a duty to a particular plaintiff or class of plaintiffs." *Herrera,* 134 N.M. at 52.

Foreseeability is an element of both duty and proximate cause. The duty element of negligence focuses on whether the defendant's conduct foreseeably created a broad zone of risk that generally poses a threat of harm to others. *Herrera*, 134 N.M. at 48. On the other hand, the proximate causation element is concerned with whether and to what extent the defendant's conduct foreseeably and substantially caused the specific injury that actually occurred. *Id.* The former is the threshold legal requirement for "opening the courthouse doors," while the latter is part of a much more specific factual requirement that must be proven to win the case once the courthouse doors are open. *Id.*

For the purposes of duty analysis, the injured party must have been a foreseeable plaintiff–that is, he must have been within the zone of danger created by the defendant's actions. *Id.* at 49. "'If the harm was not willful, the plaintiff must show that the act as to the plaintiff has possibilities of danger so many and apparent as to entitle the plaintiff to be protected against the doing of it though the harm was unintended.'" *Id.* at 52 (quoting *Palsgraf v. Long Island R.R. Co.*, 163 N.E. 99, 101 (1928)). Foreseeability is a crucial component of duty analysis in New Mexico, because "no one is bound to guard against or take measures to avert that which he

8

would not reasonably anticipate as likely to happen." *Bogart v. Hester*, 66 N.M. 311, 316 (1959).

## DISCUSSION

Plaintiff claims that Hertz owed him a duty as a customer to refrain from renting him a vehicle that had been reported stolen, because it was foreseeable that someone renting a vehicle that was reported stolen could be stopped and arrested.  Plaintiff's Response brief [Doc. 19] (hereinafter "Pl. Resp.") at 8.  Hertz breached that duty, according to Plaintiff, because it had no safeguards in place to ensure that the vehicles it rents have not been reported stolen and are not listed in the NCIC database.  *Id*. at 7.

Plaintiff advocates imposing a duty on Hertz to run a check of the NCIC database each time a car goes off of one of its lots, to ensure that it is not listed as having been stolen.  *Id*. at 8-9.  While having such a system in place would likely have prevented this incident from occurring, the Court finds that such a requirement would paint with far too broad of a brush. Foreseeability is the key to creating a duty, and Plaintiff has not shown that a failure to run the license plate and VIN number of each of the 148,000 cars rented annually from the Albuquerque location alone against the NCIC database could foreseeably create the "possibilities of danger so many and apparent," *Herrera*, 134 N.M. at 52, as to mandate this duty.

On the other hand, if Hertz had notice that the car had been reported stolen, the Court finds that Hertz would have had a duty to ensure that the vehicle was removed from the NCIC database before it rented that vehicle to a customer.  If a vehicle is reported stolen, it is entirely foreseeable that the car will be placed in the NCIC database.  It is equally foreseeable that if a car remains in the NCIC database, whoever is driving the car could be pulled over and detained, as happened in this case.  Thus, Hertz has a duty to its customers to ensure that a vehicle that it

rents out is not in the NCIC database before it leaves the lot, but only if it has actual or constructive notice that the vehicle has been reported stolen.

Therefore, whether Hertz had knowledge that the vehicle it rented to Plaintiff had been reported as stolen is a question of material fact.[5]  Plaintiff's Response brief [Doc. 19] refers to "Hertz Corporations' own admission that it was on specific notice that this particular motor vehicle was reported stolen..."  Pl. Resp. at 8.  The same brief goes on to say that "[i]n this case, however, based on the admission of its own insurance representative, Hertz Corporation was on specific notice that the particular motor vehicle that it rented to Mr. Henry was reported stolen. The notice was given to Hertz Corporation by law enforcement."  *Id*. at 9.  Certainly, if Hertz Corporation had specific notice that the vehicle that it rented to Mr. Henry had been reported stolen, it would have had a duty to Mr. Henry not to rent that vehicle to him without first ensuring that it was no longer listed in the NCIC database.  And, if Plaintiff had offered evidence that is significantly probative or more than merely colorable, *Anderson*, 477 U.S. at 249, to back up the strong assertions in his brief, he could have defeated Defendant's motion for summary judgment.

Instead, even after the Court gave Plaintiff the opportunity to come forward with any additional evidence unearthed in discovery, Plaintiff's only evidence that Hertz "was on specific notice" that the particular vehicle it rented to him had been reported stolen comes from ambiguous language gleaned from the police report of the stolen vehicle and the insurance

---

[5] Note that the Court finds that knowledge that the vehicle was reported stolen is sufficient to create a duty on Hertz's part to ensure that the vehicle is not in the NCIC database prior to its rental.  Because the placement of a vehicle in the NCIC database upon a report of its theft is foreseeable, Hertz need not know that the vehicle had actually been placed in the database to trigger a duty to refrain from renting the vehicle.

adjuster's report compiled after this incident.  The police report, filed by Officer Cadena, states simply that Mary McCormack, the complainant "spoke with Hertz and they advised her that they did not take the vehicle."  Police Rept. [Doc. 43, Ex. 1] at 2.  This statement alone is not sufficient evidence to create an inference that Hertz was on notice that one if its vehicles was about to be reported stolen.  The insurance adjuster's report contradicts the police report by indicating that Officer Cadena, rather than Ms. McCormack, had placed a call to Hertz.  *See* Adjuster's Rept. [Doc. 19, Ex. 1] at 2.  According to the Adjuster's Report, Officer Cadena claimed that "he called the Hertz office and spoke with someone there and inquired if they had retrieved the vehicle for any reason" and that when Hertz informed him they had not retrieved the vehicle, he proceeded to file the stolen vehicle report.  *Id*.  Regardless of which report were to be believed, neither report indicates that Hertz had knowledge that the vehicle was being reported stolen.  Nor does Plaintiff offer any other evidence indicating that Hertz was ever given a copy of the police report or alerted in any other way that the vehicle was reported stolen.

Even if either McCormack's or Officer Cadena's alleged vague inquiries made to Hertz (concerning whether Hertz had picked up the vehicle) could be considered sufficient evidence to put Hertz on notice that the vehicle was going to be reported as stolen, Plaintiff cannot demonstrate that his detention was the result of a breach of duty by Hertz.  At the hearing on this motion held on September 1, 2009, Plaintiff's counsel conceded that the vehicle driven by Plaintiff when he was pulled over was not the same vehicle that Cormack had reported as stolen. That the vehicle rented by Plaintiff, rather than the vehicle initially reported stolen, was listed in the NCIC database could only be the result of an error on the part of either the reporting police officer or the clerk who entered the vehicle into the NCIC database.  Hertz, which did not file a stolen vehicle report, cannot be held responsible for such a clerical error.  Even assuming that

11

Hertz had been put on notice that the vehicle rented by McCormack had been reported stolen, Plaintiff has presented no evidence to show that Hertz's following up to ensure that that particular vehicle was removed from the NCIC database would have somehow led to the discovery that the vehicle driven by Plaintiff was mistakenly in the database.  Thus, even if Plaintiff could show that Hertz was on constructive notice that the vehicle driven by McCormack was reported stolen and that it violated a duty to its potential customers by not ensuring that the vehicle that had been reported stolen was not in the NCIC database prior to renting out the vehicle, Plaintiff has offered no evidence to demonstrate that this breach of duty proximately caused Plaintiff's injury.  Hertz must therefore prevail on its motion for summary judgment.

## <u>CONCLUSION</u>

**IT IS THEREFORE ORDERED** that Defendant The Hertz Corporation's *Motion for Summary Judgment* [Doc. 14] is GRANTED.

**UNITED STATES DISTRICT JUDGE**